FILED
SUPERIOR COURT
OF GUAM

2022 SEP 30 PM 4: 21

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| GLORIA UNPINGCO SANTIAGO and RANDOLPH AGUON SANTIAGO, <br><br> Plaintiffs, <br><br> vs. <br><br> DORIS CHIGUINA AGUON and ANTHONY AGUON, <br><br> Defendants. | CIVIL CASE NO. CV0145-21 <br><br><br> **DECISION AND ORDER GRANTING PLAINTIFFS' MOTIONS TO SHOW CAUSE RE: CONTEMPT** |

This matter came before the Honorable Dana A. Gutierrez on July 1, 2022 for a hearing on Plaintiffs' Gloria Unpinco Santiago ("Plaintiff Gloria") and Randolph Aguon Santiago's ("Plaintiff Randolph") (collectively, "Plaintiffs") Motion for an Order to Show Cause Re: Contempt filed on December 3, 2021 and the Second Motion for an Order to Show Cause Re: Contempt filed on March 21, 2022. Present were Plaintiff Gloria; Assistant Public Defender David Highsmith representing Plaintiffs; Defendants Doris Chiguina Aguon ("Defendant Doris") and Anthony Aguon ("Defendant Anthony") (collectively "Defendants"); and Attorney Charles H. McDonald II representing Defendants.[1] Upon consideration of the pleadings, testimony, and arguments presented and in light of the applicable law, the Court hereby **GRANTS** Plaintiffs' Motions to Show Cause Re: Contempt.

---

[1] Plaintiff Randolph did not appear as he was off-island.

## BACKGROUND

This matter arises out of Plaintiffs' Motions for an Order to Show Cause Re: Contempt of the Mutual Temporary Restraining Order issued on June 15, 2021. The parties have a longstanding disagreement that began with a boundary dispute and resulted in the Plaintiffs' filing of a Complaint for Permanent Injunction and the Defendants filing of a Counterclaim for Permanent Injunction and Intentional Infliction of Emotional Distress. At a June 15, 2021 hearing, the parties agreed to a Mutual Temporary Restraining Order ("Mutual TRO") pending the resolution of this case, or until further order of the Court.[2] The Mutual TRO provides:

> Until further order of the Court, Plaintiffs and Defendants are MUTUALLY ENJOINED AND RESTRAINED from threatening, harassing, assaulting, or disturbing the peace of one another.

On December 3, 2021 Plaintiffs filed a Motion for an Order to Show Cause Re: Contempt ("First Motion") and on March 21, 2022, a Second Motion for an Order to Show Cause Re: Contempt ("Second Motion") (collectively, "Motions"). On April 18, 2022, the Defendants filed an Opposition to the Plaintiff's Motions ("Opp'n Mot."). The Court held a hearing on Plaintiffs' Motions on July 1, 2022 and after hearing testimony from Defendant Anthony, Defendant Doris, and Plaintiff Gloria, took the matter under advisement.

## FACTUAL FINDINGS

At the July 1, 2022 hearing on the two motions for contempt, the Court heard testimony from Plaintiff Gloria, Defendant Anthony, and Defendant Doris pertinent to the Motions, and makes the following findings.[3]

---

[2] Based upon the agreement of the parties, the Court issued a Mutual TRO which was filed on June 15, 2021.

[3] In this case, the Court notes that there are additional allegations raised by the Plaintiffs, in particular Plaintiff Gloria, regarding conduct, such as an alarm continuously going off and music being played at high volumes for hours, taken by the Defendants in violation of the Mutual TRO. However, based upon the presentation of the evidence, these allegations did not meet the standard of contempt. Likewise, the Defendants alleged during the July

1. The Court issued a Mutual TRO on June 15, 2022. Both Defendant Anthony and Defendant Doris have knowledge of the Mutual TRO. Minute ("Min.") Entry, 9:14:34-9:14:38 AM; Min. Entry, 9:50:04-9:50:08 AM; Def. Anthony's Decl. at 1 (Apr. 18, 2022); Def.'s Doris's Decl. at 1 (Apr. 18, 2022).

2. The Parties are next door neighbors in Umatac. Min. Entry, 9:14:30-9:14:40 AM.

3. There is about fifteen feet between the two homes. Min Entry, 9:52:05-9:52:11 AM.

4. On approximately July 21 or 22, 2021 Defendants placed a smiley face sign pointing towards the Plaintiffs' home. Min. Entry, 9:38:04-9:38:07 AM.

5. Defendant Anthony described the smiley face sign as trash he found in his yard. Min. Entry, 9:38:08-9:38:12 AM.

6. In the videos submitted, the smiley face sign is facing the Plaintiffs' house on the property line that separates the Plaintiffs' and Defendants' respective properties. Ex. 1A; Ex. 1B.

7. There is a pair of women's underwear on the smiley face sign on December 31, 2021 and January 3, 2022. Ex. 1A; Ex. 1B.

8. Defendant Doris placed underwear in the flower bush that faces the Plaintiffs' house. Min. Entry, 9:52:05-9:52:11 AM.

9. Defendant Doris has only hung underwear on the side of the house that faces the Plaintiffs' because she does not have bushes on the other side of the house. Min. Entry, 9:52:22-9:53:08 AM.

---

1, 2022 hearing that Plaintiff Gloria should be sanctioned for her numerous reports to the Guam Police Department. Therefore, consideration of that matter was not properly before the Court.

10. Defendants do not hang any clothes that are not underwear on the bushes. Min. Entry, 9:53:10-9:53:17 AM.

11. Plaintiff Gloria saw the underwear on the bushes and hung on the smiley face sign. Min. Entry, 10:03:38-10:03:53 AM.

12. Defendant Anthony testified that the underwear was placed "because it irritates you when you have cameras facing your own property, watching you 24/7, seven days a week." Min. Entry, 9:16:53-9:17:00 AM.

13. Defendant Anthony then testified that the underwear was hung up for decoration. Min. Entry, 9:17:35-9:17:40 AM.

14. Defendant Doris testified that the underwear was hanging in the bushes because her clothesline was full. Min. Entry, 9:52:22-9:52:44 AM.

15. Plaintiff Gloria testified that the Defendants put up the smiley face to intimidate her. Min. Entry, 10:00:38-10:00:46.

16. Defendant Anthony dropped his shorts and exposed his buttocks to Plaintiff Gloria on the morning of December 31, 2021. Min. Entry, 9:40:22-9:40:26 AM; Ex. 1A.

17. Plaintiff Gloria saw Defendant Anthony drop his pants the second time through her kitchen window while she was preparing food, she then checked her security camera to confirm his actions. Min. Entry, 10:09:13-10:10:30 AM.

18. Defendant Anthony was arrested not long after dropping his shorts and exposing his buttocks to Plaintiff Gloria on December 31, 2021. Min. Entry, 9:40:30-9:40:32 AM.

19. Plaintiff Gloria testified that the video showing Defendant Anthony dropping his shorts pretty much shows the entire side of the Defendants' house. Min. Entry, 10:23:12-10:23:18.

20. Plaintiff Gloria also testified that Defendant Doris was not around when Defendant Anthony dropped his pants and is not in the video. Min. Entry, 10:23:18-10:23:25.

21. In the video of Defendant Anthony dropping his shorts, Defendant Doris is not seen in the video. Ex. 1A.

## LAW AND DISCUSSION

Plaintiffs' Motions move the Court to find the Defendants in contempt of the Mutual TRO based on the failure of the Defendants to refrain from threatening, harassing, assaulting, or disturbing the peace of one another. First Motion, at 2 (Dec. 2, 2021); Second Motion, at 2 (Mar. 21, 2022). In opposition, Defendants argue that the Defendants' actions do not amount to threatening, harassing, assaulting, or disturbing the peace of the Plaintiffs as required by the Mutual TRO. Opp'n Mot. at 2 (Apr. 18, 2022). The Defendants contend that the Plaintiffs complain of conduct that the Defendants "are rightfully able to do on their property." *Id.* Further, the Defendants argue that the Defendants' actions were not willful and not directed at the Plaintiffs. *Id.* Additionally, the Defendants argue that the Plaintiffs are oversensitive and are inducing the Defendants to violate the Court's Order. *Id.* The Defendants also contend that the Plaintiffs bring the Motions in bad faith and with unclean hands. *Id.*

### I.   Standard for Contempt.

A party can be found guilty of contempt of court when they disobey "any lawful judgment, order, or process of the court." 7 GCA § 34101. Under Guam law, the elements of

contempt are generally: "1) a valid order, 2) knowledge of the order, 3) ability to comply with the order, and 4) willful failure to comply with the order." *Lamb v. Hoffman*, 2008 Guam 2 ¶ 44 (citing *Rodriguez v. Rodriguez*, 2003 Guam 8 ¶ 15).

The first three elements of contempt are clearly met in this case. The Court executed a valid Mutual TRO on June 15, 2021. The Defendants had knowledge of the Order, as both acknowledged the Mutual TRO during their testimony and referenced the Mutual TRO in their declarations supporting their Opposition to the Plaintiffs' Motions. Min. Entry, 9:14:34-9:14:38 AM; Min. Entry, 9:50:04-9:50:08 AM; Def. Anthony's Decl. at 1 (Apr. 18, 2022); Def.'s Doris's Decl. at 1 (Apr. 18, 2022). As to the third factor, the Defendants have presented no evidence that they do not have the ability to comply with the Order.

### A. The Defendants Exhibited a Willful Failure to Comply with the Order.

Willfulness is traditionally considered an "essential element of the offense" of contempt. *People of Guam v. Torres*, 2008 Guam 26 ¶ 53 (referencing *In re D.I. Operating Co.*, 240 F. Supp. 672 (D. Nev. 1965)). However, "a good faith belief that a party's interpretation of the [Court's] order is correct may prevent a finding of willfulness for purposes of establishing contempt." *Lamb*, 2008 Guam 2 ¶ 52. A party acts in "good faith" when they take "all reasonable steps within [its] power to comply with the court's order." *Landmark Legal Found v. E.P.A.*, 272 F. Supp. 2d 70, 78 (D.D.C. 2003).

The Defendants are under the impression that if their conduct occurs on their property, the conduct cannot be construed to violate the Mutual TRO. *See* Opp'n Mot. at 2 (Apr. 18, 2022). While there is a right to undertake conduct that others may disagree with on your own property, in this instance the Court must consider if the Defendants acted in accordance with the Mutual

TRO and in a manner that was not directed towards the Plaintiffs when Defendant Doris hung underwear and Defendant Anthony exposed his buttocks.

### 1. Defendant Anthony Violated the Mutual TRO When He Exposed His Buttocks to Plaintiff Gloria.

The Mutual TRO states that, "Until further order of the Court, Plaintiffs and Defendants are MUTUALLY ENJOINED AND RESTRAINED from threatening, harassing, assaulting, or disturbing the peace of one another." Guam's Criminal Code is instructive on the definition of harassment and defines harassment as one who "engages in any other course of alarming conduct or of repeatedly committed acts which alarm or seriously annoy such other person serving no legitimate purpose of the defendant." *See* 9 GCA § 61.20(c).

In this case, Defendant Anthony admitted that he exposed his buttocks twice in the direction of Plaintiffs' home, and Plaintiff Gloria stated that this occurred while she was standing at her window preparing food. Specifically, Plaintiff Gloria testified that she saw him drop his shorts the second time, and she then checked her security camera to confirm it. As a result of his action, Defendant Anthony was arrested on December 31, 2021.

Although Defendant Anthony stated that he exposed his buttocks twice as a joke for his wife and that she was on the side of the house while he was doing it, Plaintiff Gloria testified that the video pretty much shows the entire side of the Defendants' house, that Defendant Doris was not around when he dropped his shorts, and is not present in the video. A review of the video submitted of the incident reflects a pretty extensive view of the side of the Defendants' house. The video submitted shows Defendant Anthony exposing his buttocks twice towards the Plaintiffs' house and his wife, Defendant Doris, is not seen on the video.

Based on the testimony of the parties as well as a review of the video submitted, the Court does not agree that the action of Defendant Anthony removing his shorts and exposing his buttocks to Plaintiff Doris was a joke he was playing on his wife. Rather, his actions can be reasonably seen as "serving no legitimate purpose of the defendant" and harassing to Plaintiff Gloria. *See* 9 GCA § 61.20(c).

The Defendants never argue that this behavior was not willful, but instead argue that they are allowed to undertake this conduct because it is on their property and not directed toward Plaintiff Gloria. However, as noted above, the Court finds that while Defendant Anthony was on his property, he was only fifteen feet away from the Plaintiffs' residence and it was directed towards Plaintiff Gloria. Further, the fact that the action takes place on their property does not eliminate the requirements agreed upon by the Defendants to comply with the Mutual TRO. Therefore, the Court finds that Defendant Anthony did not act in good faith to follow the Mutual TRO and willfully failed to comply with the Court's Order when he exposed his buttocks on December 31, 2021.

### 2. Defendants Violated the Mutual TRO When They Hung Underwear on the Bushes and on the Smiley Face Faced Towards the Plaintiffs' House.

With regard to the hanging of underwear on the bushes on the side of the house facing Plaintiffs, the Defendants took the position that the underwear in the bush was decoration or there to dry. Min. Entry, 9:17:35-9:17:40 AM; Min. Entry, 9:52:22-9:52:44 AM. However, the testimony of Defendant Anthony and the Court's review of a picture and videos submitted into evidence provide a different perspective on the underwear issue.

The Defendants proposed three different reasons for hanging underwear on the bushes outside their house varying from antagonistic to illogical. When initially asked by Plaintiffs'

counsel why his wife hung underwear on the bushes facing the Plaintiffs' home, Defendant Anthony responded by stating, "because it irritates you when you have cameras facing your own property, watching you 24/7, seven days a week." Min. Entry, 9:16:53-9:17:00 AM. When Plaintiffs' counsel then asked if hanging the underwear grew out of irritation, Defendant Anthony answered, "Well, like I said it is just a decoration." Min. Entry, 9:17:35-9:17:40 AM. On the other hand, Defendant Doris testified that she hung up the underwear because the clothesline was full.[4] Min. Entry, 9:52:22-9:52:44 AM. She also testified that there is only underwear hanging up on the side that faces the Plaintiffs' house because there are no bushes on the other side of the house. Min. Entry, 9:52:19-9:52:22 AM. In the video evidence, the Court could clearly see that there was underwear left hanging on the smiley face sign, that Defendant Anthony described as "trash", facing the Plaintiffs' house. Ex. 1A; Ex. 1B; Min. Entry, 9:38:08-9:38:12 AM. The Court has difficulty finding that the Defendants placed the underwear in the bushes and on the smiley face with no intention of annoying the Plaintiffs.

The Court finds the different reasons given for why underwear was hung on bushes to be highly suspect. It appears that the initial reason given by Defendant Anthony—that the parties were not happy with the Plaintiffs having a camera facing their house—is the real reason behind the hanging of underwear on the bushes and the single woman's underwear on the smiley face. Further, it is also questionable that the parties would walk across their yard to hang a single piece of women's underwear on the smiley face sign, that Defendant Anthony referred to as "trash", to dry if it was not an intentional act.

---

[4] After reviewing the evidence the Court observed that two of the pairs of underwear in Ex. 7 appear to be the same underwear that is visible in Ex. 1A and Ex. 1B. There are several weeks between the exhibits. Ex. 7 was initially entered with the first Motion on December 3, 2021 and Ex. 1A was dated December 31, 2021 and Ex. 1B was dated January 3, 2022.

Based on the numerous explanations provided as well as the underwear on the smiley face sign facing Plaintiffs' house, the Court finds these actions were willful. In addition, it is doubtful that Defendants are hanging underwear for a legitimate purpose. Rather, the Court finds that the culmination of the inconsistent arguments and illogical explanations for the underwear demonstrate the intent of the Defendants to seriously annoy and harass the Plaintiffs, thereby undermining the Mutual TRO.

As with the exposing of buttocks, the Defendants do not dispute the actions were willful but rather argue that their actions do not constitute contempt because they were taken on their property. As noted above, this argument is not sound. The Mutual TRO creates court-sanctioned limits on the actions of both parties with no exception for actions on parties' private property. The Court finds this argument disingenuous and does not satisfy the definition of good faith as outlined in *Landmark.* 272 F. Supp. 2d at 78. Although the testimony reflected that Defendant Doris hung the underwear, the Court notes that Defendant Anthony is aware of the Mutual TRO, appears to be a willing participant in the conduct and also did not take steps to ensure compliance with the Court's orders. Therefore, the Court finds Defendant Anthony and Defendant Doris in violation of the Mutual TRO.

## II. Remedy and Sanctions.

Guam's contempt statute provides: "Any person found guilty of a contempt of court pursuant to § 34102(b) is subject to the same penalties as a person found guilty of a petty misdemeanor." 7 GCA § 34101(b). If convicted of a petty misdemeanor, "the court shall set a definite term [of imprisonment] not to exceed sixty (60) days." 9 GCA § 80.34(b). For a petty misdemeanor crime, the Court may impose a fine of up to Five Hundred Dollars ($500.00), or

"Any higher amount equal to double the pecuniary gain to the offender or loss to the victim caused by the conduct constituting the offense by the offender." 9 GCA § 80.50(d), (e).

The Plaintiffs "pray that an order to show cause re contempt issue forthwith and that defendant be held in contempt." First Motion, at 2 (Dec. 2 2021); Second Motion, at 2 (Mar. 21, 2022). The Court has the discretion to decide the penalty for contempt within the parameters outlined in 9 GCA §§ 80.34(b) and 80.50(d) and (e). The Court considers a fine a remedy that will achieve the desired effect of deterrence from further violations. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947).

Thus, the Court orders that Defendant Anthony shall pay a fine of $250.00 for exposing his buttocks in contempt of the Mutual TRO. Because Defendant Doris confirmed that she was responsible for the underwear, the Court orders that Defendant Doris shall pay a fine of $250.00 for hanging the underwear in contempt of the Mutual TRO.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court hereby **GRANTS** Plaintiffs' Motions to Show Cause Re: Contempt and **ORDERS** Defendant Anthony to pay a fine of $250.00 and Defendant Doris to pay a fine of $250.00 to the Judiciary of Guam within sixty (60) days of this Order.

SEP 3 0 2022

**SO ORDERED:** _____

_____
**HONORABLE DANA A. GUTIERREZ**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
*PDSC, m~p2n/r~0*

Date: _____ Time: _9/30/22__

**Joseph Bamba, Jr.**
Deputy Clerk, Superior Court of Guam

11